# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**615**

**CA 11-00038**

PRESENT: SCUDDER, P.J., SMITH, CENTRA, AND LINDLEY, JJ.

IN THE MATTER OF THE JUDICIAL SETTLEMENT OF
THE INTERMEDIATE ACCOUNT OF HSBC BANK USA, N.A.
AND SEYMOUR H. KNOX, IV, AS TRUSTEES OF THE
TRUST UNDER AGREEMENT DATED DECEMBER 23, 1975
AND RESTATED AUGUST 15, 1990 FOR THE BENEFIT
OF SEYMOUR H. KNOX, IV, ET AL., SEYMOUR H.
KNOX, IV, GRANTOR FOR THE PERIOD DECEMBER 23,
1975 TO NOVEMBER 3, 2005.
-------------------------------------------------- MEMORANDUM AND ORDER
HSBC BANK USA, N.A., PETITIONER-APPELLANT;

SEYMOUR H. KNOX, IV, OBJECTANT-RESPONDENT.
(PROCEEDING NO. 3.)
(APPEAL NO. 6.)

HARRIS BEACH PLLC, BUFFALO (RICHARD T. SULLIVAN OF COUNSEL), AND BLAIR
& ROACH, TONAWANDA, FOR PETITIONER-APPELLANT.

DONALD G. MCGRATH, PLLC, WILLIAMSVILLE (DONALD G. MCGRATH OF COUNSEL),
AND DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP, BUFFALO, FOR OBJECTANT-
RESPONDENT.

Appeal from an order of the Surrogate's Court, Erie County
(Barbara Howe, S.), entered February 24, 2010. The order determined
that petitioner had been negligent and that petitioner is liable for
all damages occasioned by its negligence.

It is hereby ORDERED that the order so appealed from is
unanimously modified on the law by denying the amended objections and
as modified the order is affirmed without costs and the matter is
remitted to Surrogate's Court, Erie County, for further proceedings on
the petition.

Memorandum: Petitioner, HSBC Bank USA, N.A. (Bank), appeals from
an order determining that the Bank, as cotrustee of the revocable
trust at issue in this proceeding, was negligent and that the Bank is
"liable for all damages occasioned by its negligence." Objectant,
Seymour H. Knox, IV, as grantor and beneficiary, created the trust in
1975, shortly after his 21st birthday. Objectant and his father,
Seymour H. Knox, III, were named as individual cotrustees, while the
Bank, under its former name, was named as a corporate trustee. The
trust provided that, upon the death of Seymour H. Knox, III, or his
resignation as a trustee or his incapacity to act as such, objectant's
uncle, Northrup R. Knox, Sr., shall become a successor trustee.

Objectant amended the trust in 1990 to make provisions concerning his wife and children as well as successor trustees (hereafter, Amended Trust).  Following the death of Seymour H. Knox, III in May 1996, Northrup R. Knox, Sr. renounced his position as a successor trustee.  Although the Amended Trust made provisions for such an event, it is undisputed that, at all times relevant to this appeal, there was no second individual trustee.

In July 2006, the Bank petitioned to resign as trustee and to settle the "Intermediate Account of the proceedings of the Trustees."  Attached to the petition was an interim accounting.  Objectant raised 20 objections to the accounting and thereafter raised 21 amended objections, challenging numerous investments as well as distributions that he contended should have been listed as investments.

Following a trial on the objections, Surrogate's Court concluded that the Bank had violated the prudent investor standard set forth in EPTL 11-2.3 (b) by failing to comply with its own internal policies and procedures before making the challenged investments or distributions.  The Surrogate further determined that the Bank was solely liable for all damages occasioned by the challenged investments and distributions on the ground that objectant, "[b]y his own admission, . . . is <u>not</u> a person who has special investment skills."  Although the Surrogate did not specifically address amended objections 18 through 21, she nevertheless determined that all of the objections were "satisfactorily established."

We agree with objectant that the prudent investor standard applies to the revocable trust created by objectant.  Pursuant to EPTL 11-1.1 (a) (2), "unless the context or subject matter otherwise requires, . . . the term 'trust' means any express trust of property created by a will, deed or other instrument, whereby there is imposed upon a trustee the duty to administer property for the benefit of a named or otherwise described income or principal beneficiary, or both."  That section then excludes a number of "trusts" from the definition of a trust, such as "trusts for the benefit of creditors, resulting or constructive trusts, . . . [and] voting trusts . . . ."  The excluded list of "trusts" does not include revocable trusts because, contrary to the Bank's contention, "[a] power of revocation is consistent with a valid trust which continues unless and until the power is exercised" (*Schenectady Trust Co. v Emmons*, 261 App Div 154, 157, *affd* 286 NY 626, *rearg denied* 286 NY 698; *see Matter of Ford*, 279 App Div 152, 156-157, *affd* 304 NY 598).  Furthermore, the Prudent Investor Act (EPTL 11-2.3) contains no exclusion for trustees of revocable trusts (*see* EPTL 11-2.3 [e] [1]).  We thus conclude that there is no merit to the Bank's contention that the prudent investor standard does not apply to revocable trusts.

It is undisputed that the Bank's portfolio manager failed to comply with the internal policies and procedures of the Bank with respect to investing in high-risk private ventures.  Contrary to the contention of the Bank, the exclusionary clause found in the Amended Trust does not absolve the Bank of liability.  That clause states that, where there is a disagreement between the corporate trustee and

the individual trustee or trustees, "the decision of the individual [t]rustees or [t]rustee shall be final and [the] corporate [t]rustee shall have no liability for any action taken in accordance with said decision." Here, however, there was no disagreement.

Contrary to the contention of the objectant, we conclude that, in accordance with the cofiduciary liability rule (*see generally Zimmerman v Pokart*, 242 AD2d 202, 203), all cotrustees are jointly liable for any damages occasioned by the breach of their joint obligation to the trust. Pursuant to that rule, "[c]ofiduciaries are . . . regarded in law as one entity . . . [and thus one cofiduciary] cannot prevail in a cause of action against [other] cofiduciaries for breach of the same obligation" (*id.; see Matter of Goldstick*, 177 AD2d 225, 238-239, *rearg granted on other grounds* 183 AD2d 684). We reject objectant's contention that the cofiduciary liability rule should not apply in this case due to the Bank's specialized investment skills.

Although "[a] trustee may delegate the exercise of a trust power to a fellow trustee, especially where the latter has an expertise in some particular aspect of the trust management . . ., [such a delegation] does not give a trustee the right to abdicate his [or her] duty to be personally 'active in the administration of the trust' " (*Goldstick*, 177 AD2d at 238). "[T]rustees cannot be automatically relieved of their responsibility for properly managing a trust with the excuse that their roles were merely 'passive' in comparison to [those of] their more active cotrustee" (*id.*). While there are exceptions to the strict application of the cofiduciary liability rule (*see e.g. Matter of Witherill*, 37 AD3d 879, 881-882; *Goldstick*, 177 AD2d at 239), we conclude that the exceptions do not apply to the facts herein. Additionally, we reject objectant's further contention that there is an automatic exception where one of the fiduciaries has "special investment skills" (EPTL 11-2.3 [b] [6]), and we agree with the Bank that the Surrogate erred in relying on *Matter of Rockefeller* (2 Misc 3d 1004[A], 2004 NY Slip Op 50135[U], *3), inasmuch as the issue in that case was whether a beneficiary, not a cofiduciary, consented to an investment decision "with full knowledge of relevant facts."

Although objectant "had no formal training in regard to investments[,] . . . the evidence revealed that []he was far from a passive trustee" (*Matter of Farley*, 186 Misc 2d 355, 357). He met with the Bank to review the trust portfolio at least once a year, or as often as four times a year, and he was aware of market fluctuations and their impact on the value of the trust. Objectant does not dispute that he brought all of the challenged investments, except one, to the Bank's attention. He also admitted that all of the challenged investment decisions, except one, were joint decisions made after he had discussed the investments with the Bank. In such circumstances, "[e]quity will not permit a knowing cofiduciary to maintain a suit against another cofiduciary for a breach of their joint obligations" (*Matter of Bloomingdale*, 48 AD3d 559, 561; *see Matter of McCormick*, 304 AD2d 759, 760, *lv dismissed* 3 NY3d 656, 733; *see generally Matter of Niles*, 113 NY 547, 557-559, *rearg denied* 21 NE 1118).

     In addition, we reject the Surrogate's determination that objectant lacked any specialized investment skills.  He was a cotrustee in his sons' trusts, and he was actively involved in monitoring those trusts and the assets retained therein.  Objectant testified at trial and at his deposition, the transcript of which was admitted in evidence at trial, that he had a personal stock account and bought and sold stock in his own name.  Indeed, on a 2008 application for life insurance, objectant stated that he had "above average" experience in investing in securities and that he invested in securities on a frequent basis.  On that same application, objectant described himself as having a moderate risk profile, meaning that he accepted a "fair degree of risk including lack of liquidity in order to pursue the potential for a modest return."  At the time of trial, objectant owned a consulting firm that consulted with owners of closely held corporate entities and businesses with respect to "succession planning of businesses."  On the Web site of that company, objectant's biography stated that "[h]is personal and business background has given him a keen insight into the primary financial and planning issues that successful entrepreneurs look to resolve."  Thus, by his own admission, objectant has specialized investment skills and should be treated similarly to the skilled and knowledgeable cotrustees in *Bloomingdale* (48 AD3d at 561; *see also Matter of Hyde*, 44 AD3d 1195, 1198, *lv denied* 9 NY3d 1027; *Witherill*, 37 AD3d at 880).

     In sum, we conclude that equity cannot permit objectant, the cotrustee who served as the driving force behind all of the challenged investments with the exception of one, and who had special investment skills, to recover damages from the Bank arising from any purported breaches of their joint obligation to the trust.  We therefore modify the order by dismissing the amended objections, and we remit the matter to Surrogate's Court for further proceedings on the petition.

Entered:  June 19, 2012                         Frances E. Cafarell
                                                Clerk of the Court